Judge Edwin A. Lombard
|,The Appellant, St. Bernard Port, Harbor and Terminal District (“the Port”), seeks review of the May 28, 2016 judgment of the district court granting a writ of mandamus, under La. Rev. Stat. 38:2191(D), to the Appellee, Guy Hopkins Construction Co., Inc. (“Hopkins”), compelling the Port to pay a September 6, 2011 judgment in the amount $101,306.47, *9 with legal interest. Additionally, on appeal, the Port filed a Peremptory Exception of No Cause of Action, which we deny. Furthermore, pursuant to our de novo review, we affirm the judgment of the district court.
Facts and Procedural History
This matter stems from a public works contract dispute between the Port and Hopkins. In August 2000, Hopkins was awarded a public works contract by the Port to complete Phase I of a major public works renovation.[1] In 2002, the Port sued Hopkins raising breach of contract and damages claims as a result of Hopkins |2faulty performance and abandonment, as well as for incomplete work that it was forced to retain other contractors to complete. Hopkins filed a reconventional demand for monies it asserted it was owed pursuant to the contract.
The district court ultimately offset the unpaid balance it determined was due to Hopkins under the contract — $459,-081.86 — against the damages due to the Port, thereby resulting in a judgment of $101,306.47 being awarded to Hopkins. We affirmed the judgment on appeal. St. Bernard Port, 12-0167, p. 27, 108 So.3d at 889. The judgment became final after the Louisiana Supreme Court denied writs on May 17, 2013. The Port did not pay the judgment, nor did it appropriate funds to pay the judgment pursuant to La. Rev. Stat. 13:5109(B)(2).
Thereafter, in November 2013, Hopkins filed a Petition for Alternative Writ of Mandamus'wherein it asserted that after entering into a construction contract with the Port, several disputes arose during the course of the construction project with the Port and this litigation ensued. Hopkins stated that it was awarded a final contract balance of $101,306.47, with legal interest thereon from the date of judicial demand until paid. It further averred that funds for constructing the improvements were appropriated by the Port for the purpose of entering into the public works contract prior to the contract being awarded. Thus, there was no requirement, it pleaded, that another appropriation be made to pay the judgment at issue for the remaining contract balance. Hopkins further pleaded that under the Public Works Act, specifically La. Rev. Stat. 38:2131, public bodies are required to timely pay contractors. Moreover, it stated that Hopkins attempted to resolve its claim through ordinary means by filing suit and proceeding to trial, but to no avail as the Port has refused to pay the remaining contract balance.
|sThe district court denied the writ on February 12, 2014. Later, Hopkins filed a motion for new trial, which was granted. After allowing the parties to submit their arguments on briefs, the district court issued the writ of mandamus.[2] On May 28, 2016, the district court issued a judgment granting mandamus and thereby directed the Executive Director of the St. Bernard Port, Harbor and Terminal District, Rob *10 ert J. Scafidel, to pay $101,306.47, with legal interest and fees, unto Hopkins.
The Port timely filed the instant appeal raising the following assignments of error:
1.' The district court erred in granting a writ of mandamus to enforce a money judgment granted in 2011 against the Port;
2. The district court should not have applied the amendment to La. Rev. Stat. 38:2191(D) retroactively to a contract signed in 2000 and/or suit filed in 2002 in granting the writ of mandamus;
3. The district court erred in determining that La. Rev. Stat. 38:2191 is applicable to a pre-existing judgment;
4. The district court erred in finding that Hopkins satisfied the requirements for obtaining a writ of mandamus to enforce a money judgment against the Port;
5. The district court erred in determining that an appropriation had been made under La. Rev. Stat. 38:2191(D); and
6. The district court erred in including interest from the date of judicial demand in the mandamus writ.
I ¿Furthermore, prior to the submission of this matter for appeal, the Port filed a peremptory exception of no cause of action. In its exception, the Port raises the very same questions of law as raised on the merits of its appeal, principally whether Hopkins established that it is entitled to a writ of mandamus under La. Rev. Stat. 38:2191 (D), which it argues cannot be retroactively applied. In light of this commonality, it is unnecessary for this Court to separately discuss the exception. See Adams v. S. Lafourche Levee Dist., 15-0507, 15-0508, pp. 7-8 (La.App. 1 Cir. 6/27/16), 199 So.3d 20, 24. Moreover, for the reasons discussed below, we find no merit in the Port’s exception of no cause of action, which we hereby deny.
Standard of Review
In prior appeals involving the interpretation of La, Rev. Stat. 38:2191 relative to a money judgment, other circuits have noted that a de novo standard of review is applicable because “the proper interpretation of a statute is necessarily a question on law.” See Quality Design and Const., Inc. v. City of Gonzales, 13-0752, pp. 3-4 (La.App. 1 Cir. 3/11/14), 146 So.3d 567, 569-570. Additionally, a district court’s findings of fact in a mandamus proceeding are subject to a manifest error standard of review. Hess v. M & C, Inc., 14-962, p. 3 (La.App. 3 Cir. 2/11/15), 157 So.3d 1200, 1203.
Writ of Mandamus is an Attempt to Collect a Money Judgment
In its first assignment of error, the Port asserts that Hopkins’ writ of mandamus is simply an attempt to collect its money judgment, not an attempt to collect a final payment due under contract. This attempt at collection of a 1,-judgment with the seizure of public funds, it avers, is prohibited by Louisiana, Constitution Art. XII, Sect. 10 (C) and La. Rev. Stat. 13:5109(B)(2).[3]
*11 Based upon the foregoing, the Port maintains that Louisiana courts have consistently held that contractors are prohibited from obtaining a writ of mandamus to collect a money judgment. Hoag v. State, 04-0857 (La. 12/1/04), 889 So.2d 1019, 1024; Jones v. Traylor, 94-2520 (La. App. 4 Cir. 8/23/95), 660 So.2d 933; Landry v. City of Erath, 628 So.2d 1178 (La. App. 3 Cir. 1993); Dept. of Trans & Dev. v. Sugarland Ventures, Inc., 476 So.2d 970 (La. App. 1 Cir. 1985); Fontenot v. State, Through Dept. of Highways, 358 So.2d 981 (La. App. 1 Cir. 1978), reversed on other grounds, 355 So.2d 1324 (La. 1978). The remedy Hopkins has available, according to the Port, is to obtain a specific appropriation to pay the judgment. Mandamus is not a remedy because the Port did not appropriate funds to pay this judgment. Newman Marchive P’ship v. City of Shreveport, 07-1890 (La. 4/08/08), 979 So.2d 1262.
La. Rev. Stat. 38: 2191, entitled Payments under contract, provides:
A. All public entities shall promptly pay all obligations arising under public contracts when the' obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.
B. Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees.
C. The provisions of this Section shall not be subject to waiver by contract.
D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.
Hopkins pleaded, in its Petition for Alternative Writ of Mandamus, that it: sought final payment on its contract with the Port; unsuccessfully pursued relief through ordinary proceedings, and. obtained a judgment; Thus, it sought mandamus relief pursuant to La. Rev. Stat. 38:2191(D), which has its own appropriation | requirement, similar to La. Rev. Stat. 13:5109 (B)(2). While both statutes are arguably applicable, in this instance the more specific law, La. Rev. Stat. 38:2191, controls as it specifically applies to public works contracts. Smason v. Celtic Life Ins. Co., 615 So.2d 1079, 1087 (La. App. 4th Cir. 1993), writ denied, 618 So.2d 416 (La. 1993).
We find that the existence of a money judgment in this matter does not change *12 the fact that a final payment was owed to Hopkins under a public works contract for which the Port appropriated monies. If all of the statutory requirements for La. Rev. Stat. 38: 2191 are met, which we discuss below, Hopkins’ recovery is not precluded. Thus, we find that this assignment of error is without merit.
Retroactive Application of La. Rev. Stat. 38:2191(D)
In its second assignment of error, the Port argues that La. Rev. Stat. 38:2191(D) is inapplicable to the instant matter because it was a substantive amendment made to the statute in August 2011. The Port avers that the public works contract at issue was executed in 2000 and the underlying lawsuit was filed by the Port in 2002. The 2011 amendment, it maintains, cannot therefore be retroactively applied as the statute itself does not provide for retroactive application. The Port further asserts that Section B of La. Rev. Stat. 38:2191 was also determined to be a substantive statutory amendment that could only be applied prospectively. Professional Construction Services, Inc. v. Parish of Jefferson, 562 So.2d 1184 (La. App. 5th Cir. 1990).
The Port relies upon the prohibitions contained in La. Civ. Code art. 6 and La. Rev. Stat. 1:2:
La. Civ. Code art. 6, entitled Retroactivity of Laws, states: “In the absence of contrary legislation expressions, substantive laws apply prospectively only.
| ^Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.”
La. Rev. Stat. 1:2, entitled Revised Statutes not retroactive, provides: “No Section of the Revised Statutes is retroactive unless it is expressly so stated.”
We have found the aforementioned two provisions to be co-extensive, although “La. R.S. 1:2 does not distinguish between substantive, procedural and interpretive laws.” Brookewood Investments Co. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 12-1205, p. 5 (La.App. 4 Cir. 5/15/13), 116 So.3d 899, 903, unit denied, 13-1372 (La. 11/1/13), 125 So.3d 429.
As the Port notes, in Brookewood, we clarified that La. Civ Code. art. 6 sets forth a two-part inquiry for determining whether a law can be applied retroactively:
First, we must ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual obligations or vested rights. If no such intent is expressed, the enactment must be classified as substantive, procedural, or interpretive. [Keith v. U.S. Fidelity & Guar. Co.], Id., p. 6, 694 So.2d at [180] 183 [ (1997) ]. It is well accepted that substantive laws either establish new rules, rights, and duties or changes existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. Id. Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding of the operation of the laws. Id. Nonetheless, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Id.
Brookewood, 12-1205, pp. 5-6, 116 So.3d at 903-904.
*13 Section D of La. Rev. Stat. 38: 2191 was added by Act No. 184; however, the Section is silent as to whether the Legislature intended it to be applied [ ^retroactively. Therefore, we must determine whether this Section is substantive, procedural or interpretive.
Section D is interpretative because it clarifies that with respect to progressive stage payments at least, any public entity failing to make such payments “arbitrarily or without reasonable cause” can be compelled to render such payment through a writ of mandamus. Also, the First Circuit has acknowledged that the appropriation requirement of La. Rev. Stat. 38:2191(D) is interpretive in nature as it promotes the Legislature’s intent to provide for the prompt payment of contractors:
Indeed, by referring to the, appropriation made for the award and execution of the contract, the statute promotes the legislative intent, to provide for the prompt payment to contractors awarded public works contracts.
Quality Design, 13-0752, p. 7, 146 So.3d at 572.
Furthermore, Section (D) provides for the efficient facilitation of forcing public entities to promptly render monies owed under public contracts, in support of the statute’s stated purpose, by stating that a writ of mandamus may issue where funds have been appropriated for an underlying public works contract. The amendment at issue codifies a remedy for those parties awaiting payment from public entities where the funds have already been appropriated. Therefore, we find that Section D is also procedural and subject to retroactive application.
We do not find that Section D is substantive as it does not establish new rules, rights, and duties nor change existing ones. For instance, Louisiana courts have held that mandamus is a proper remedy to enforce rights fixed by contract, which obviates the need for a public officer to exercise his or her discretion. See Trahan v. Lafayette Par. Sch. Bd., 07-1170, pp. 8-9 (La. App. 3 Cir. 3/5/08), 978 So.2d 1105, 1111, writ denied, 08-0651 (La. 5/9/08), 980 So.2d 696. Also, the Supreme Court has held that mandamus is a proper remedy to compel public officials to pay judicially determined claims from monies previously appropriated therefor. Jefferson Lake Sulphur Co. v. Kolb, 226 La. 506, 510, 76 So.2d 546, 548 (La. 1954).
The act of appropriation of funds is discretionary and specifically granted to the legislature by the constitution. Par. of St. Charles v. R.H. Creager, Inc., 10-180, p. 5 (La. App. 5 Cir. 12/14/10), 55 So.3d 884, 888, writ denied, 11-0118 (La. 4/1/11), 60 So.3d 1250. Nevertheless, the Legislature, in amending La. Rev. Stat. 38: 2191 to provide for mandamus relief, removed the element of discretion from a public entity or officer rendering a progressive or final payment due under contract by requiring that the amount at issue was already appropriated. Indeed, the Second Circuit has interpreted the statutory requirements of La. Rev. Stat. 38:2191(D) to be consistent with general mandamus principles:
The allowance of mandamus relief where the public entity has appropriated funds for the award and execution of a contract suggests that payment of the balance due pursuant to an appropriation is a ministerial duty, rather than a discretionary act. Mandamus may be ordered to compel a public officer to perform a ministerial duty required by law. La. C.C.P. art. 3863.
Foster Const., Inc. v. Town of Richwood, 48, 171, p. 8 (La.App. 2 Cir. 6/26/13), 117 So.3d 607, 610-11.[4]
*14 | t i Although section B, as the Port noted, was not held to have retroactive application, that is a separate section of this statute specifically involving a party’s right to attorney’s fees. The purpose of La. Rev. Stat. 38:2191 is to ensure the prompt payments of obligations arising under public contracts, as codified in section A of the statute, when said obligations become due and payable. Section D clarifies what conditions must be met to seek prompt payment and provides a procedure for accomplishing this’ end that is consistent with the general mandamus principles and Louisiana jurisprudence. The Fifth Circuit explained the connection between these two sections:
The use of the word “shall” in this provision [Section A] unequivocally expresses a public entity’s mandatory duty to fulfill its contractual obligations as they become due. Should a public entity fail to fulfill its mandatory duty under La. R.S. 38:2191(A), subsection D, again employing the mandatory “shall,” subjects the public entity to mandamus to compel payment of the sums due under the contract.
Wallace C. Drennan, Inc. v. St. Charles Par., 16-177, p. 10 (La.App. 5 Cir. 9/22/16), 202 So.3d 536, 544.[5]
Thus, for the foregoing reasons, we find that Section D is an interpretive and procedural amendment to La. Rev. Stat. 38:2191. This assignment of error is without merit.
La. Rev. Stat. 38:2191 is Non-applicable to a Pre-existing Judgment
In its next assignment of error, the Port argues that the purpose of La. Rev. Stat. 38:2191 is not to grant a contractor a writ of mandamus after a final judgment | ^has been rendered judicially determining the amount due. It asserts that the Louisiana Legislature has not statutorily provided such an option for contractors. Thus, the district court erred in interpreting the statute in a manner that conflicts with the Constitutional prohibition against the issuance of a writ of mandamus to collect a judgment.
' The Port emphasizes that a writ of mandamus is an extraordinary remedy that is penal in nature, and it must be strictly construed. Such writs only lie, it argues, to compel performance of duties that are purely ministerial and in which no element of discretion is left to the public officer. Hoag, 04-0857, p. 8, 889 So.2d at 1024. It further argues that the addition of mandamus relief to La. Rev. Stat. 38: 2191 did not modify the basic requirement that a writ of mandamus may only issue to compel performance of a ministerial duty and is not subject to discretion pursuant to La. Civ. Code Proc. art. 3861, et. seq.
The Port points out that the underlying money judgment was rendered in 2011, after 10 years of litigation, and that Hopkins did not seek mandamus relief until after the judgment became final. It avers that because the district court had to determine the validity of Hopkin’s claims for *15 unpaid monies under the Contract, this is not a purely ministerial matter. Moreover, the Port supports its argument by explaining that the district court determined that some of the Port’s arguments had merit and denied Hopkins all of the relief it sought. It asserts that the district court erred in issuing a writ of mandamus enabling Hopkins to collect the money judgment.
Legislation is the solemn expression of legislative will, and thus, the interpretation of legislation is primarily the search for the legislative intent. Mayeux v. Charlet, 16-1468, p. 8 (La. 10/28/16), 203 So.3d 1030, 1036 (citing Cat’s Meow, Inc. v. City of New Orleans Through Dept, of Finance, 98-0601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198). The starting point in thé interpretation of any statute is the language of the statute itself as what a legislature says in the text of a statute is considered the best evidence of its intent and will. Id. (citing M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 13 (La. 7/1/08), 998 So.2d 16, 27). The Supreme Court further set forth the following general principles applicable to interpreting legislative intent:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La. Civ. Code art. 9; La. Rev. Stat. §§ 1:3 and 1:4. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.” La. Civ. Code art. 10; La. Rev. Stat. § 1:3. The legislative history of an act and contemporaneous circumstances are also helpful guides in ascertaining legislative intent. Exxon Pipeline Co. v. Louisiana Public Service Com’n, 98-1737, p. 9 (La. 3/2/99), 728 So.2d 855, 860.
Mayeux, 16-1463, p. 8, 203 So.3d at 1036.
The Supreme Court has explained that “[mjandamus is a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864.” Aberta, Inc. v. Atkins, 12-0061, pp. 2-3 (La. 5/25/12), 89 So.3d 1161, 1163 (citing La. Code Civ. Proc. art. 3861). A writ of mandamus' may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La. Civ. Code Proc. art. 3862 [emphasis added]. Pursuant to La. Code Civ. Proc. art. 3863, “[a] writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law.” A ministerial duty is a “simple, definite duty, arising under conditions admitted or proved to exist, h4and imposed by law.” Hoag, 04-0857, p. 7, 889 So.2d. at 1024. The Supreme Court has further explained that a ministerial duty “contains no element of discretion.” Aberta, 12-0061, pp. 2-3, 89 So.3d at 1163 (quoting Newman Marchive Partnership, Inc. v. City of Shreveport, 07-1890 (La. 4/8/08), 979 So.2d 1262, 1269). A writ of mandamus, therefore, may not be issued to compel a public official to exercise discretionary authority. Constr. Diva, L.L.C. v. New Orleans Aviation Bd., 16-0566, p. 13 (La.App. 4 Cir. 12/14/16), 206 So.3d 1029, 1037 [citations omitted].
Lastly, Mandamus is an extraordinary remedy that is to be used sparingly. Id. It never issues in doubtful- cases. City of Hammond v. Parish of Tangipahoa, 07-0574, p. 11 (La.App. 1 Cir. 3/26/08), 985 So.2d 171, 181.
*16 The statute at issue, La. Rev. Stat. 38: 2191, entitled Payments under contract, provides:
A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.
B. Any public entity faffing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees.
C. The provisions of this Section shall not be subject to waiver by contract.
D. Any public entity faffing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, 11tishall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.
The stated purpose of the aforementioned statute, contained in section A, is to ensure that public entities promptly pay their obligations when they become due pursuant to the terms of public contracts. Section B sets forth the requirements for parties seeking to recover attorneys’ fees against public entities when they have failed to make either a progressive or final payment. Section C provides that the terms of a public contract cannot alter the application of this statute, which reinforces the Legislature’s intent that those contracting with public entities are promptly paid. Finally, Section D sets forth that mandamus relief is available against public entities in two circumstances: 1) when a public entity has failed to make progressive stage payments arbitrarily or without reasonable cause under a contract; or 2) when a public entity had failed to tender a final payment when due under the contract. The relief available to the aggrieved party is limited by the amount due under the contract, “up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.”
The statute does not prohibit a contractor from first seeking relief through an ordinary proceeding, nor has it been interpreted by any of our fellow Circuits to bar such actions. Hopkins seeks payment for monies owed under a public contract. The fact that the amount due was adjudicated is irrelevant to the Legislature’s purpose of ensuring that private entities contracting with public entities receive the monies due, if the other statutory requirements were met.
| ^Furthermore, we note that in Quality Design, supra, the First Circuit upheld the issuance of a writ of mandamus compelling the City of Gonzales to pay a contract balance pursuant to a final judgment under La. Rev. Stat. 38: 2191. The First Circuit also reasoned that a public entity’s separate claims against a contractor are distinct from the issue of whether a writ of mandamus should issue. Quality Design, 13-0752, p. 7, 146 So.3d at 572. The First Circuit explained that “pursuant to the mandate of La. R.S. 38:2191(D), mandamus is the appropriate and proper remedy by which QDC (the contractor) can execute that judgment.” Id., 13-0752, pp. 7-8, 146 So.3d at 572. We too find that said statute *17 is applicable under the facts of this matter. Thus, this assignment of error is 'without merit.
Failure to Satisfy the Requirements of La. Rev. Stat. 38:2191
In its next assignment of error, the Port avers that Hopkins failed to demonstrate that it satisfied the statutory requirements of La. Rev. Stat. 38:2191.[6] It argues that final payments were only due under the contract when there was final acceptance by the Port, filing of a certificate of final acceptance and production of a clear lien certificate. Hopkins, the Port asserts, did not meet any of these requirements as it abandoned the project leaving many portions of the project incomplete. Thus, the Port states that it was justified in refusing to pay any balance Hopkins claimed to be due. The Port further maintains that the Port did not file a final, formal acceptance of the contract. The Port also avers that the amount it is being ordered to pay in mandamus is not the amount due under the contract, but the amount due under the September 2011 judgment.
|17In the previous appeal of this matter, we recognized that under Section 15.2.9[7] of the contract, the unpaid balance became payable after the replacement contractor hired by the Port completed the job. St. Bernard Port, 12-0167, p. 23, 108 So.3d 874, 887-88. Thus, the final payment was due when the replacement contractor hired by the Port completed Phase I. The contract terms are what the Port is ultimately obligated to adhere to under La. Rev. Stat. 38: 2191.
Moreover, formal final acceptance, under the statute, is only required when the aggrieved party seeks attorney’s fees, under section B,[8] and is not required to seek mandamus relief as a whole. We further note that under Section D, the caveat that mandamus relief is only available if the public entity’s failure to pay is arbitrary or without reasonable cause applies to progressive payments. However, Hopkins seeks a final payment.
Lastly, as the Port notes, we upheld the district court’s finding that Hopkins had in fact abandoned the project leaving some work incomplete. St. Bernard Port, 12-0167, p. 9, 108 So.3d at 881. Nevertheless, that issue is distinct from 11sHopkins being owed a final payment due under its contract pursuant to La. Rev. Stat. 38:2191(D). Therefore, we find this assignment of error to be without merit.
No Evidence of Appropriation for the Contract
In its fifth assignment of error, the Port contends that there was no specific appropriation, as required by La. Rev. Stat. 38:2191(D), for the public works eon- *18 tract at issue. The Port asserts that while there was an appropriation made for the whole project, an appropriation was not specifically made for the contract with Hopkins.
The Port represents that it made annual budget appropriations for general expenses for renovation and construction of the intermodal terminal. The Port states that it used funds from the annual budget to pay for other construction work on the Project, but did not include funds in future budgets, after Hopkins abandoned its work and was later terminated by the Port. The Port relies upon the testimony of its Chief Financial Officer, Drew Heaphy, who explained that there was a general appropriation made each fiscal year for the funds that were expected to be expended in that fiscal year for each phase of the Project. He further testified, it avers, that there were funds identified for the whole Project, the rehabilitation of the terminal which encompassed more than the work that Hopkins was to provide. He further explained that funds were identified in the annual budget of the Port to pay anticipated expenses related to the Project until Hopkins abandoned the job. Funds were not appropriated for this specific project and Hopkins name is absent from the relevant documents.
li9We disagree. As previously noted, Hopkins was awarded a contract with the Port through a bid process.[9] While the Port equivocates that the appropriated money was for the Project, not for Hopkins’ contract, we find that an appropriation was made, thereby separating the disputed funds from the public fisc, to pay Hopkins for Phase I of the Project. Mr. Heaphy testified that at the beginning of the fiscal year, June 1st of each year, the Port appropriates monies to be paid on the contract(s) for that year. He further testified that because the work Hopkins was to perform fell within two fiscal years, 2000-2001 and 2001-2002, that monies to pay Hopkins, inclusive of change orders, were budgeted for and included within a general appropriation for the Project during each of those years. Mr. Heaphy further explained that Hopkins’ contract balance of $459,081.86, was “put into the continuation of the construction project, other vendors and everything,” after Hopkins abandoned the job.
We recognize that the Port had to retain another contractor to complete Phase I; however, payments that may have been tendered to a replacement contractor for the same scope of work do not change the fact that there was initially an appropriation to pay Hopkins. Unlike in Foster Const., Inc. v. Town of Richwood, where no appropriation was made by a town and the contractor was compensated with a combination of loan funds and monies from the town’s general fund, in the matter sub judice, funds were earmarked to pay Hopkins for the Project it was awarded.[10] Additionally, the fact the Port spent the remaining | ^monies appropriated to pay Hopkins does not bar Hopkins from recovery, as the First Circuit explained in Quality Design, supra:
Additionally, the City cites no authority for its untenable proposition that availability of the mandamus relief in La. R.S. 38:2191 (D) is conditioned on appropriated funds remaining available. The statute does not refer to appropriated funds remaining available; rather, it clearly states appropriation “for the award and execution of the contract.” The fact that the City has spent those appropriated funds on other contracts in *19 violation of the statute’s mandate, alone, supports a finding that its nonpayment of the contract balance warrants mandamus relief.
Id., 13-0752,p. 7, 146 So.3d at 572.
Therefore, we find that the requirement of Section D that an appropriation was “made for the award and execution of the contract, including any authorized change orders” has been satisfied. This assignment of error is without merit.
Interest Due on Writ of Mandamus
Lastly, the Port asserts that La. Rev. Stat. 38:2191 is silent as to whether interest is to be included in the calculation of payments under a contract. The contract in this matter did not authorize applying interest, and neither does La. Rev. Stat. 38:2191. The Port further avers that judicial interest applies to judgments, not contracts.
The Port is correct in arguing that La. Rev. Stat. 38:2191 does not provide for an award of interest. Only the First Circuit, in Quality Design, supra, has addressed whether judicial interest falls within the scope of the subject statute such that it could be included in the grant of mandamus on appeal.
In Quality Design, a contractor, on appeal, sought an award of interest to be included in his mandamus relief. The First Circuit, which granted the contractor judicial interest, reasoned that district courts are required to award interest in 12T,iudgments as prayed for or as provided by law under La. Code Civ. Proc. art. 1921.[11] Id., 13-0752, p. 8, 146 So.3d at 573. The Court considered that, under Louisiana law, debts bear interest from the due date. La. Civ. Code art. 2000.
The Court further relied upon C.R. Humphreys General Contractor, Inc. v, Tangipahoa Parish School System, unpub., 07-0993, pp. 16-17 (La.App. 1 Cir. 12/21/07), 973 So.2d 178, writ denied, 08-0166 (La. 3/14/08), 977 So.2d 934, in holding that a judgment granting mandamus could be amended to include an award of interest. Quality Design, 13-0752, p. 9, 146 So.3d at 573. In C.R. Humphreys, a contractor for a public works project appealed a trial court’s failure to award interest when it found the Tangipahoa Parish School System owed it the balance of a contract pursuant to La. Rev. Stat. 38:2191. The First Circuit, in C.R. Humphreys, concluded that the contractor was entitled to interest on the contract sum awarded from the date of its final pay request. C.R. Humphreys, 07-0993, p. 9 (citing Thomas B. Catchings and Associates v. City of Baton Rouge, 621 So.2d 767 (La.1993)).
Similarly, we find that Hopkins is entitled to an award of judicial legal interest, as ordered by the district court, because the interest is a sum “due under the contract.” La. Rev. Stat. 38:2191(D). Thus, we find that this assignment of error is without merit.
DECREE
For the foregoing reasons, the peremptory exception of no cause of action of St. Bernard Port, Harbor and Terminal District, is denied. Additionally, the May | ⅞⅞28, 2016 judgment of the district court granting mandamus relief to Guy Hopkins Construction Co., Inc., is affirmed.
EXCEPTION OF NO CAUSE OF ACTION DENIED; AFFIRMED

. We note that the Port moved for Reasons for Judgment; however, the district court did not provide reasons.

. La. Const. Art. XII, § 10 (c) provides:
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judg *11 ment against the state, a state agency, or a political subdivision shall be exigible, pay-abhj or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered. [Emphasis added].
La. Rev. Stat. 13:5109 (B)(2)states:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

. In Foster Const., a Contractor appealed the denial of his petition for writ of mandamus *14 under La. Rev. Stat. 38:2191, to the Second Circuit. The Court found that mandamus was not an available remedy under La. Rev. .Stat, 38:2191 because there was no appropriation made by the town for the public works contract, The contractor was initially being paid by the town from monies left over from a loan though the town later made contract payments from its general fund. Id.., 48,171, p. 5, 117 So.3d at 609.

. In Drennan, a contractor filed a petition for writ of mandamus under La. Rev. Stat. 38:2191 to compel St, Charles Parish to make a final progressive payment of $100,000 pursuant to a public works contract, The district court granted the petition, The Fifth Circuit upheld the grant of mandamus relief, Id., 16-177, p. 13, 202 So.3d at 546.

. The appropriation requirement is discussed in the next assignment of error.

. Section 15.2.9, as we quoted, states in pertinent part:
OWNER may, after giving CONTRACTOR seven days’ written notice ... terminate the services of CONTRACTOR, exclude CONTRACTOR from the site and take possession of the Work ... and finish the Work as OWNER may deem expedient. In such case, CONTRACTOR shall not be entitled to receive any further payment until the Work is finished.

.Section B of La. Rev. Stat. 38:2191, provides:
B. Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees.

. See Footnote 1, supra.

. See Footnote 4, supra.

. The court shall award interest in the judgment as prayed for or as provided by law. La. Code Civ. Proc. art. 1921.