PAMELA J. OLANO, SILVER BOURBON, INC., LABEUTI, INC., BOURBON BURLESQUE CLUB, INC., RAYMOND PALAZZOLO, AND GUY OLANO, JR.

VERSUS

BILLIE V. KARNO, KARNO 410 BOURBON REAL ESTATE, LLC, KARNO 327 BOURBON REAL ESTATE, LLC, BVK ENTERPRISES, LLC

 

   \*

 

   \*

 

 

   \*

 

   \*

 

   \*

\* \* \* \* \* \* \*

NO. 2022-CA-0504

 

COURT OF APPEAL

 

FOURTH CIRCUIT

 

STATE OF LOUISIANA

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-05225, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

Thomas J. Barbera
BARBERA LAW FIRM
3330 Lake Villa Drive, Suite 202
Metairie, LA 70002

    COUNSEL FOR PLAINTIFF/APPELLANTS

Robert J. Ellis, Jr.
R. J. Ellis Law Firm, LLC
650 Poydras Street
Suite 2615
New Orleans, LA 70130

    COUNSEL FOR DEFENDANTS/APPELLEE

       **VACATED AND REMANDED**
       **FEBRUARY 07, 2023**

PAB
RLB
SCJ

This is a property dispute.  Appellant, N'awlins Entertainment of Louisiana, Inc. ("NEL"), appeals the district court's March 24, 2022 judgment,[1] which ordered the Recorder of Mortgages for Orleans Parish to cancel a *lis pendens* filed against certain immovable property located on Bourbon Street in New Orleans, Louisiana, owned by Appellee, Karno 327 Bourbon Real Estate, LLC.  For the reasons that follow, we vacate the district court's order cancelling the *lis pendens* and remand this matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

This case has an extensive history and background, the heart of which involves immovable property located at 327 Bourbon Street, New Orleans, LA 70130 (the "Property").  Over the years, the adverse parties have been embroiled in various lawsuits with one another; the genesis of the instant litigation was the filing of a petition for damages on May 25, 2018 (the "Petition") by Raymond

---

[1] The judgment was amended on March 31, 2022, in order to reflect the correct instrument and MIN numbers associated with the *lis pendens* to be cancelled.  The original judgment mistakenly used the lease recordation Instrument No: 2019-10073 MIN#: 1296968 CIN#: 653763 rather than the *lis pendens* Instrument No: 2020-254457 MIN #1335260.

Palazzolo—General Manager of NEL—together with several other plaintiffs against multiple defendants, including Karno 327.[2] Amongst the various claims asserted in the Petition was an allegation of a breach of lease contracts, executed in 1997 and 2013, pertaining to the use of the Property by former tenant Bourbon Burlesque Club, Inc. Several months later, another putative lease of the Property was executed by Raymond Palazzolo on behalf of NEL and Rosemary Caracci ("Ms. Caracci") on behalf of 327 Bourbon Street, LLC, on December 10, 2018, and subsequently recorded with the Recorder of Mortgages for Orleans Parish.[3] At the time the Petition was filed, the Property was co-owned by Karno 327 Bourbon Real Estate, LLC ("Karno 327"), whose sole member and manager was Billie Karno ("Ms. Karno"), and 327 Bourbon Real Estate, LLC, whose sole owner and manager was Ms. Caracci.

On February 14, 2019, Karno 327 filed a petition for declaratory judgment seeking to have the purported lease held by NEL for use of the Property be declared legally invalid. Karno 327 argued that it had not signed a lease with NEL and that La. C.C. art. 805 requires the consent of both co-owners in order for the lease to be enforceable.[4] The matter was heard by the district court on May 17,

---

[2] Pamela J. Olano, Silver Bourbon, Inc., Labeuti, Inc., Bourbon Burlesque Club, Inc., Raymond Palazzolo, and Guy Olano, Jr. vs. Billie V. Karno, Karno 410 Bourbon Real Estate, LLC, Karno 327 Bourbon Real Estate, LLC, BVK Enterprises, LLC, filed in Civil District Court for the Parish of Orleans, Case No. 2018-5225, Division "L".

[3] Both the lease and the amendment granting the usufruct to NEL, discussed *infra*, were recorded with the Recorder of Mortgages for Orleans Parish at Instrument No: 2019-10073 MIN#: 1296968 CIN#: 653763.

[4] La. C.C. art. 805 provides that "[a] co-owner may freely lease, alienate, or encumber his share of the thing held in indivision. The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivision."

2019, and judgment was rendered in favor of Karno 327 on June 5, 2020, declaring the lease legally invalid and not enforceable as a matter of law. NEL timely appealed this judgment on the grounds that the Karno 327 had failed to join an indispensable party. This Court agreed with NEL, and on April 7, 2021, we found that the district court abused its discretion when it did not require Karno 327 to join the necessary party, which, in turn, rendered the declaratory judgment an absolute nullity.[5]

During the pendency of the petition for declaratory judgment, NEL and 327 Bourbon Street, LLC, entered into an amendment of the lease at issue on March 15, 2019. This amendment granted a usufruct in favor of NEL for the fruits of one-half of 327 Bourbon Street, LLC's interest in the Property. Neither Ms. Karno nor Karno 327 were parties to this instrument. On July 21, 2020, NEL filed a notice of *lis pendens* against the Property.[6] The notice specifically identified the pending litigation that was instituted by the Petition filed on May 25, 2018, and NEL's recorded leasehold and usufruct interests in the Property. Following, on August 5, 2021, Ms. Karno and the successors of Ms. Caracci engaged in a "property swap" involving several properties the two co-owned.[7] As a result of this swap, Karno 327 became the sole owner of the Property.

---

[5] *See Olano v. Karno*, 20-0396 (La. App. 4 Cir. 4/7/21), 315 So.3d 952.

[6] The *lis pendens* was filed in the original May 25, 2018 petition, bearing case no 018-5225.

[7] The Act of Exchange was executed by Ms. Karno and Ms. Caracci's two sons, Vincent and Mark Caracci—Mark is identified on this document as the independent executor of the Succession of Rosemary Caracci.

On March 2, 2022, Karno 327 sent a letter to NEL informing NEL that to any extent that there was a valid lease or usufruct related to the Property, it was cancelled and revoked. Karno 327 then filed a petition for a writ of mandamus on March 4, 2022, seeking to have the district court issue an order to the Recorder of Mortgages for Orleans Parish to cancel the *lis pendens* associated with the Property. The matter came for hearing on March 24, 2022. At the hearing, there was much discussion about the validity of the lease and usufruct, but the district court made its ruling on the *lis pendens* in the following exchange with Karno 327's counsel:

> **COURT:**
> \* \* \*
> Mr. Ellis, are you done?
>
> **COUNSEL:**
> Yes, Your Honor. Respectfully we would request an order from this court requesting the recorder of mortgages to cancel the *lis pendens*.
>
> **COURT:**
> That order will be granted. Let me state that in this court's opinion, after hearing what I have heard, the testimony of Mrs. Karno and the evidence put forward, it is apparent to me that this lease and the usufruct is in violation of Article 805 of the Civil Code and it is an absolute nullity. So, but that's not before me today, but that's where it is.

On the same date, the district court signed a judgment, which read in pertinent part:

> After hearing the testimony, evidence, and law the Court renders the following judgment:
>
> **IT IS ORDERED**, that the Orleans Parish, Louisiana Recorder of Mortgages is to cancel the Lis Pendens (Inst. No.: 2019-10073 MIN#: 1296968 CIN#: 653763) filed by N'Awlins Entertainment of Louisiana, Inc.

This timely appeal followed.

**DISCUSSION**

This Court previously explained that "[a] 'district court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review.'" *Central St. Matthew United Church of Christ v. Atkins*, 18-0823, p. 7 (La. App. 4 Cir. 1/30/19) 264 So.3d 1243, 1248 (citing *St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.*, 16-0907, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 10). NEL asserts that the district court erred in finding a co-owner cannot grant a usufructory interest over its share of the property. However, as noted from the exchange quoted above and the written judgment, the district court's ruling was limited to the issuance of an order cancelling the *lis pendens*. We find the district court's opinion regarding the validity of the lease and usufruct to be nothing more than dicta, and it was acknowledged as such when the district court stated "that's not before me today. . ." Consequently, we find it more appropriate for us to review the district court's ruling which ordered the cancellation of the *lis pendens*.

*Lis Pendens*

"'A notice of *lis pendens* may be recorded to give notice of the pendency of an action affecting immovable property' pursuant to La. C.C.P. art. 3751." *Id.*, 18-0823, p. 7, 264 So.3d at 1248 (quoting *Campbell v. Melton*, 01-2578, p. 5, n.4 (La. 5/14/02), 817 So.2d 69, 74). "La. C.C.P. art. 3752 B specifies that the 'notice shall be recorded in the mortgage office of the parish where the property to be affected is situated and has effect from the time of the filing for recordation.' The purpose of a notice of *lis pendens* is to give effective notice to third persons of the pendency of an action affecting immovable property." *Id.* Louisiana Code of Civil Procedure article 3751 provides:

The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person not a party thereto unless a notice of the pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752.

"[T]here are three manners for which a notice of *lis pendens* has effect[,] namely where an action[:] (1) affects title to immovable property; (2) asserts a mortgage on immovable property; or (3) asserts a privilege on immovable property." *Central St. Matthew*, 18-0823, p. 7, 264 So.3d at 1248. Further, "[t]he notice of *lis pendens* is not concerned with the merits of the litigation which prompted its recordation." *Whitney National Bank v. McCrossen*, 93–2160 (La. App. 4 Cir. 3/29/94), 635 So.2d 401, 403 (citing *Dane v. Doucet Bros. Const. Co., Inc.*, 396 So.2d 418, 420 (La. App. 4 Cir. 1981)). Rather, "[t]he question of whether the *lis pendens* in this case was improperly recorded turns on a determination of whether the interest asserted in the underlying suit is an action affecting title." *Central St. Matthew*, 18-0823, p. 8, 264 So.3d at 1249. In the case *sub judice*, NEL has neither asserted a mortgage nor a privilege on the Property. Therefore, the issue becomes whether a recorded lease and usufruct interest[8] in the Property that are the basis of the *lis pendens* affect title within the meaning of La. C.C.P. art. 3751.

This Court considered a similar issue when called upon to determine whether a lease cancellation suit affected title to a leased property as provided for in La. C.C.P. art. 3751. After deliberation, this Court reasoned that "[i]f a lease of

___

[8] Both of which were assignable under the terms of the original lease, which provides the following:

BINDING EFFECT: The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

6

immovable property is recorded, then it may be asserted by the lessee against third persons acquiring rights from the owner of the immovable." *Ducote v. McCrossen*, 95-2072, p. 3 (La. App. 4 Cir. 5/29/96) 675 So.2d 817, 818-819 (citing A.N. Yiannopolous, *Louisiana Civil Law Treatise: Property*, Section 226). "Thus, such a lease might best be viewed as 'affecting title' to the immovable property as the term 'affect title' is used in Article 3751." *Ducote*, 95-2072, p. 3, 675 So.2d at 819. "Consequently, a suit seeking cancellation of such a lease also would be viewed as 'affecting title' as the term 'affecting title' is used in Article 3751." *Id.* Thus, that suit properly would be the subject of a notice of *lis pendens*." *Id.*[9]

As we have just outlined, our prior jurisprudence clearly establishes that a properly recorded lease affects title as contemplated by La. C.C. art. 3751. We find this to be consistent with our public records doctrine,[10] codified under La. C.C. art. 3338, which provides, in pertinent part:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> * * *

(2) The lease of an immovable.

Notwithstanding, Karno 327 asserts that once it obtained sole ownership of 327 Bourbon that, even assuming the validity of the underlying lease and usufruct,

---

[9] *See also Burgers v. Bickford*, No. 12-2009, 2015 WL 1726161, * at 8 (E.D. La. 2015), which notes in its analysis of the *Ducote* opinion that "a suit seeking cancellation of an assignable lease of immovable property affects title of that property within the meaning of Article 3751. . ."

[10] This Court recently pronounced that "Louisiana's public policy stating that interest in real estate must be recorded in order to effect third persons is known as the public records doctrine." *Ely Edwards Enterprises, Inc. v. Pontchartrain Park CDC Real Estate Holdings, LLC*, 21-0623, p. 6 (La. App. 4 Cir. 4/13/22) 338 So.3d 50, 53 (citing *Cimarex Energy Co. v. Mauboules*, 2009-1170, p. 18 (La. 4/9/10), 40 So.3d 931, 943).

7

the lease was terminated by its letter of March 2, 2022. We disagree. Germane to the instant matter, La. C.C. art. 2711 provides that "[t]he transfer of the leased thing does not terminate the lease, unless the contrary had been agreed between the lessor and the lessee." Thus, while recordation of instruments claiming an interest in a property is used to put third parties on notice, recordation also serves to protect those tenants who possess a leasehold interest from arbitrary and unilateral termination of those leases by subsequent owners who purchase a property subject to that interest.

In this case, the December 10, 2018 lease provided for a fixed term of five years with five subsequent renewal terms, but makes no provision for the termination of the lease upon transfer of the property. The subsequent March 5, 2019, amendment purported to grant the usufruct, but did nothing to alter any of the other original terms. In the absence of any ruling on the validity of the lease or usufruct, we must accept these documents at face value. Further, we find, as did this Court in *Ducote*, that title in this instance is affected in two ways: by the suit for damages based upon a breach of lease contract and by the recordation of the subsequent lease and usufruct. *Ducote*, 95-2072, p. 3, 675 So.2d at 819. As a result, we conclude that the district court prematurely ordered the cancellation of the *lis pendens* before rendering judgment on the validity of the lease and usufruct.

## CONCLUSION

For the foregoing reasons, we find that as a matter of law, the district court erred by ordering the Recorder of Mortgages for Orleans Parish to cancel the *lis pendens* for Instrument No: 2020-254457 MIN #1335260. Accordingly, we vacate

that judgment and remand this matter to the district court for further proceedings consistent with this opinion.

**VACATED AND REMANDED**