Judge Terri F. Love
Woodrow Wilson Construction, LLC, f/k/a Woodrow Wilson Construction Co., Inc.'s ("WWC") seeks appellate review of the trial court's partial final judgment that denied its petition for a writ of mandamus to compel final retainage payment from the Orleans Parish School Board ("OPSB") in connection with the construction of a new school. In that La. R.S. 38:2191 applies and the statutory requirements have been met, we find the trial court erred in denying the petition for a writ of mandamus. Accordingly, the trial court's August 2017 judgment is reversed and remanded to the trial court to issue the writ of mandamus and to determine the amount of attorney's fees and interest due to WWC for bringing the mandamus action.
FACTUAL AND PROCEDURAL BACKGROUND
This appeal arises from a public works contract dispute. OPSB awarded WWC the *3 contract for the construction of a new pre-kindergarten through eighth grade school at North Kenilworth Park. The contract sum was $22,476,000. According to the contract, the project was to be substantially completed within 548 days and imposed liquidated damages of $5000 per day for every day the project was late. Construction began in February 2013, and a certificate of substantial completion was issued on February 3, 2016. Upon receipt of the certificate of substantial completion, WWC submitted an application for final retainage payment along with the lien waivers and a copy of the clear lien certificate, which OPSB received on May 23, 2016.
To date, OPSB has not issued to WWC the final retainage payment. Consequently, WWC filed a petition to enforce the public works contract and petition for a writ of mandamus. OPSB filed its answer, affirmative defenses, and reconventional demand, claiming that it is entitled to withhold the amounts due for retainage because it is entitled to collect liquidated damages for the delays[1] in completion of the project, which it alleges exceeds the amount due to WWC under the contract and which it believes WWC is responsible for. WWC has also filed suit against OPSB in a separate ordinary proceeding relating to the same delays, alleging it suffered overhead expenses and general condition damages. Neither party has established liability for the delays, nor has a judgment been rendered on the issue.
After a hearing on the mandamus action, the trial court denied WWC's petition for a writ of mandamus. WWC filed a notice to seek supervisory writs of the trial court's oral ruling, which the trial court granted. Thereafter, WWC filed an unopposed motion to declare the ruling on mandamus a partial final judgment because it dismissed less than all of the claims raised in the suit, which the trial court granted. In writ no. 2017-C-0738, this Court granted supervisory review for the sole purpose of remanding the matter to the trial court to consider the notice of intent as a motion for appeal. WWC timely filed this devolutive appeal and OPSB filed an exception of no cause of action with this Court.
EXCEPTION
Consideration of a peremptory exception filed for the first time in the appellate court is discretionary. La. C.C.P. art. 2163. OPSB claims that a writ of mandamus must be directed to a public officer pursuant to La. C.C.P. arts. 3861 and 3863. Because WWC's petition for a writ of mandamus only names OPSB as a defendant and does not name a public official as a defendant, OPSB argues that the petition fails to state a cause of action for mandamus and the exception should be granted.
La. C.C.P. art. 3861 provides, "[m]andamus is a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864. "A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining relief may cause injustice. ..." La. C.C.P. art. 3862. Further, La. C.C.P. art. 3863 states that "[a] writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor." Id. (Emphasis added).
On the other hand, La. R.S. 38:2191(D), the statute upon which the mandamus action *4 is brought in this case, expressly states:
Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.
Id. (Emphasis added).
"It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." State v. Campbell , 03-3035 (La. 7/6/04), 877 So.2d 112, 118 (citing Fontenot v. Reddell Vidrine Water Dist. , 02-0439, p. 20 (La. 1/14/03), 836 So.2d 14, 28 ). As compared to La. C.C.P. arts. 3861 and 3863, La. R.S. 38:2191(D) is the statute specifically directed to the matter at issue in this case. Therefore, La. R.S. 38:2191(D) supercedes the more general in character La. C.C. arts. 3861 and 3863. Accordingly, OPSB's exception is denied.
STANDARD OF REVIEW
This case concerns the proper interpretation of La. R.S. 38:2191. This Court previously explained that the interpretation of La. R.S. 38:2191 relative to a money judgment is reviewed de novo because "the proper interpretation of a statute is necessarily a question of law." St. Bernard Port, Harbor and Terminal District v. Guy Hopkins Construction Co., Inc. , 16-0907, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 10 (quoting Quality Design and Const., Inc. v. City of Gonzales , 13-0752, pp. 3-4 (La. App. 1 Cir. 3/11/14), 146 So.3d 567, 569-570 ). In addition, "a district court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review." Hopkins , 16-0907, p. 4, 220 So.3d at 10 (citing Hess v. M & C, Inc. , 14-962, p. 3 (La. App. 3 Cir. 2/11/15), 157 So.3d 1200, 1203.
DISCUSSION
The question to be determined on appellate review is whether OPSB may withhold final payment due under La. R.S. 38:2191 on the basis that the project was completed behind schedule, despite the fact that liability for the delays has yet to be adjudicated. Without making an express finding of whether or not final payment is due, the trial court denied WWC's petition for a writ of mandamus. The trial court found that "the statute is not applicable because there is a question as to whether or not final payment is due under the [terms of the] contract."
La. R.S. 38:2191 provides in its entirety:
A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract . All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.
B. Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees .
*5 C. The provisions of this Section shall not be subject to waiver by contract.
D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.
Id. (Emphasis added).
Fundamental to all cases involving statutory interpretation is the legislative intent and the determination of the reasoning that prompted the law's enactment. Quality Design , 13-0752, p. 4-5, 146 So.2d at 570 (citing In re: Succession of Boyter , 99-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1128 ). "The rules of statutory construction are designed to ascertain and enforce the intent of the legislature." Id. , 13-0752, p. 5, 146 So.3d at 570. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9 ; Quality Design , 13-0752, p. 5, 146 So.3d at 571.
WWC maintains that the trial court erred in denying the writ of mandamus because La. R.S. 38:2191(A) creates a ministerial duty to issue final payment when that final payment becomes due under the contract. The statute states that "[a]ll public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract." La. R.S. 38:2191(A) (emphasis added). WWC avers that pursuant to the contract provisions final payment became due upon satisfying the requirements set forth in Section 9.3.1.3, which include the statutory requirements of La. R.S. 38:2191(B). Thus, the real issue in dispute is when final payment is considered "due" under the terms of the contract.
Section 9.3.1.3 of the contract states payment for "normal retainage" is due upon the following having occurred: (1) Substantial Completion is achieved; (2) the Architect and the Owner approve and accept the Certificate of Substantial Completion, including an attached punchlist; (3) the Contractor submits an application for payment for retainage; (4) the Contractor submits the lien waivers to accompany the application for payment; (5) the 45-day lien period in La. R.S. 38:2242 has expired; and (6) the Contractor provides the Owner and the Architect with a clear lien and privilege certificate.
On February 3, 2016, the architect issued a certificate of substantial completion and punch list, at which time recordation of acceptance by the governing authority was made the following day, thereby satisfying (1) and (2) of Section 9.3.1.3. The 45-day lien period in La. R.S. 38:2242 expired on March 20, 2016, satisfying (5) of Section 9.3.1.3. And, on May 23, 2016, WWC submitted its application for payment for retainage ("Application for Payment No. 33"), along with the lien waivers, and a copy of the Lien & Privilege Certificate, and thus, satisfying (3), (4), and (6) of Section 9.3.1.3. As of May 23, 2016, WWC had fully satisfied the six enumerated contractual requirements of Section 9.3.1.3 of the contract.
Moreover, in order for a ministerial duty[2] to issue final payment to arise under *6 La. R.S. 38:2191(B), there must be: (1) formal final acceptance of the work; and (2) the owner must receive a clear lien and privilege certificate. These requirements are replicated in the enumerated requirements of Section 9.3.1.3. We find the statutory requirements of La. R.S. 38:2191(B) complied with by virtue of WWC's satisfaction of the contractual requirements. Therefore, payment became due and payable under the contract when the enumerated requirements of Section 9.3.1.3 were met.
Despite the foregoing, OPSB still contends that final payment is not due. OPSB argues that pursuant to Section 9.11 of the contract, it is entitled to collect liquidated damages in any manner available including withholding final payment. OPSB claims that WWC is liable for the delays in the completion of the project. Because its assessment of damages exceeds the amount due for retainage, OPSB argues that final payment is not due under the contract terms; and thus, La. R.S. 38:2191 does not apply.
OPSB suggests that payment is not due because it has reasonable cause to withhold payment as security for its separate delay claim against WWC. However, this argument neither comports with the legislative intent, the reasoning prompting the statute's enactment, or the express language of La. R.S. 38:2191. While Section 9.11 allows OPSB to withhold liquidated damages in any manner, including withholding final payment, any alleged right OPSB has to withhold payment only arises, as stated in Section 9.11, when payment becomes "due to the Contractor." Thus, OPSB cannot rely on Section 9.11 without also acknowledging that final retainage payment was due. OPSB's ministerial duty to tender payment arose upon satisfaction of Section 9.3.1.3, which in turn satisfied La. R.S. 38:2191(B). Consequently, OPSB had no discretionary authority to withhold payment under Section 9.11 because the statutory requirements of La. R.S. 38:2191 had already been met and thus a ministerial duty was owed. Furthermore, OPSB's reliance on Section 9.11 is ill-founded because La. R.S. 38:2191(C) expressly prohibits OPSB from contractually waiving the ministerial duty established by the statute's provisions.
At the center of OPSB's defense is the assertion of a separate claim for damages. "The purpose of La. [R.S.] 38:2191 is to ensure the prompt payment of obligations arising under public contracts, as codified in [sub]section A of the statute, when said obligations become due and payable." Hopkins , 16-0907, p. 11, 220 So.3d at 14. By amending La. R.S. 38:2191, to provide for mandamus relief, the Legislature "removed the element of discretion from a public entity or officer rendering a progressive or final payment due under contract by requiring that the amount at issue was already appropriated." Id. , 16-0907, p. 10, 220 So.3d at 13. Moreover, as the Fifth Circuit explained, the language of the statute further supports the statute's purpose:
The use of the word "shall" in [subsection A] unequivocally expresses a public entity's mandatory duty to fulfill its contractual obligations as they become due. Should a public entity fail to fulfill its mandatory duty under La. R.S. 38:2191(A), subsection D, again employing the mandatory "shall," subjects the public entity to mandamus to compel *7 payment of the sums due under the contract.
Wallace C. Drennan, Inc. v. St. Charles Par. , 16-177, p. 10 (La. App. 5 Cir. 9/22/16), 202 So.3d 535, 544 ; Hopkins , 16-0907, p. 11, 220 So.3d at 14. Thus, subsection D provides a procedural mechanism for forcing public entities to promptly pay monies owed under public contracts. Likewise, subsection C prohibits contractual waiver of the provisions which establish the rights and obligations between the public entity and contractor. See La. R.S. 38:2191(C). Once the final retainage payment became due under the terms of the contract, pursuant to La. R.S. 38:2191(C), no provision of the contract can serve to waive WWC's right to receive final retainage payment.
Additionally, OPSB suggests that for this Court to accept one provision of the contract and not the other "ignores the basic rules of contract construction," requiring us to give practical effect to all parts, reading the contract as a whole. To find payment is due under the terms of the contract because the requirements of Section 9.3.1.3 have been met, OPSB contends, is to ignore the rest of the contract provisions relating to the deadline for substantial completion, liquidated damages for delays, and the owner's means to recover liquidated damages. While OPSB cautions this Court to give effect to all parts of the contract, we find OPSB's argument demonstrates its failure to do the same.
A reading of the contract as a whole indicates that, under Section 6.2 of the contract, OPSB agreed to resolve all "claims" in a court of competent jurisdiction. Section 15.1.1 of the General Conditions, defines a "claim" as a "written demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the [c]ontract." It also includes "other disputes and matters in question between the Owner and Contractor arising out of or relating to the [c]ontract." A reading of these provisions of the contract demonstrate that OPSB's "right" to liquidated damages is in fact not a right at all. At this stage of the proceedings, OPSB simply has a "claim" for alleged damages as liability for the delays has yet to be judicially determined. Thus, when read within context of the whole contract, OPSB's alleged right to withhold liquidated damages under Section 9.11 is undermined by Section 15.1.1 of the General Conditions and Section 6.2 of the contract. Finally, even assuming OPSB has a right to unilaterally withhold liquidated damages, that right is limited by statute to 45 days pursuant to La. R.S. 38:2191(B) and (C).
Giving practical effect to all parts of the contract, we find OPSB's contractual interpretation does not comport with the law. Asserting a separate claim for damages as a means to circumvent a mandamus action would render La. R.S. 38:2191 meaningless. OPSB's separate damages claim must be tried in an ordinary proceeding. Liability for the delay in this case is a heavily contested issue and the resolution of which would delay determination of whether to issue a writ of mandamus.[3] It is the protracted nature of ordinary proceedings that the legislature intended to avoid by amending La. R.S. 38:2191 to provide for mandamus relief. For this reason, a public entity's separate claims against a contractor are secondary to the contractor's right to prompt payment under La. R.S. 38:2191. This statutory interpretation is also supported when compared to the Louisiana *8 Public Works Act. La. R.S. 38:2243(B) echoes the legislative intent of La. R.S. 38:2191 as it provides that the "claims of the claimants shall be paid in preference to the claims of the public entity." Id. (emphasis added). Therefore, we find OPSB is barred from asserting a separate claim for ordinary relief to defeat a mandamus action.
Our finding that OPSB cannot use its separate potential claims to withhold payment that is due under the contract is also supported by recent jurisprudence. In Hopkins , a construction company sought a writ of mandamus to compel the port, harbor and terminal district ("the Port") to pay a judgment of $101,306.47, with legal interest, from its breach of contract case against the Port. Hopkins , 16-0907, p. 1, 220 So.2d at 8-9. The trial court granted a writ of mandamus. The Port appealed claiming in pertinent part that La. R.S. 38:2191 did not apply to a pre-existing money judgment and that the requirements of La. R.S. 38:2191 were not satisfied for obtaining a writ of mandamus. Id. , 16-0907, p. 3, 220 So.3d at 10. In particular, the Port argued that it was justified in withholding any balance claimed to be due to Hopkins because it had abandoned the project and left portions of it incomplete. Id. , 16-0907, p. 16, 220 So.3d at 17.
This Court affirmed the trial court's granting of a writ of mandamus, finding that a public entity cannot refuse to make a final payment under La. R.S. 38:2191 on the basis that the public entity possesses reasonable cause to withhold the payment. We explained that in amending La. R.S. 38:2191, the legislature "removed the element of discretion from a public entity...rendering...final payment due under the contract by requiring that the amount at issue was already appropriated." Id. , 16-0907, p. 10, 220 So.3d at 13.
At the hearing on mandamus in this case, the trial court noted that Hopkins is distinguishable from the present set of facts because in Hopkins an ordinary money judgment was rendered prior to the filing of the petition for mandamus. The contractor in Hopkins sought to apply retroactively the mandamus remedy under La. R.S. 38:2191(D) to collect a previously awarded ordinary money judgment that the public entity refused to pay. In this instance, WWC sought the issuance of a writ of mandamus prospectively without the delays that accompany ordinary relief-as allowed under subsection D.
The distinction that the trial court recognized is one of procedure and one that this Court, in Hopkins , found insignificant. We stated, "[t]he fact that the amount due was adjudicated is irrelevant to the Legislature's purpose of ensuring that private entities contracting with public entities receive monies due, if the other statutory requirements are met." Id. , 16-0907, p. 15, 220 So.3d at 16 (emphasis added). Therefore, we adopt the reasoning in Hopkins as to the applicability and purpose of La. R.S. 38:2191, which recognized that "a public entity's separate claims against a contractor are distinct from the issue of whether a writ of mandamus should issue." Id. , 16-0907, p. 16, 220 So.3d at 16 (citing Quality Design , 13-0752, p. 7, 146 So.3d at 572 ).
OPSB's justification for withholding final retainage payment is a separate claim against WWC, which is distinct from whether a writ of mandamus should issue. The only question to determine on mandamus is whether the requirements of La. R.S. 38:2191 have been met. Having found that WWC satisfied the requirements of La. R.S. 38:2191 as of May 23, 2016, final payment became due and payable. Thus, OPSB had a ministerial duty to issue final payment and had no discretion to withhold based on a separate claim against WWC. Accordingly, the trial court erred in denying WWC's petition for a writ of mandamus.
*9 Finally, WWC avers that the trial court erred in failing to award attorney's fees. La. R.S. 38:2191(B) provides in relevant part, "[a]ny public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees." Id. (emphasis added). The use of the word "shall" establishes a mandatory duty. La. R.S. 1 :3 ; Hamilton v. Royal Int'l Petroleum Corp. , 05-0846, p. 11 (La. 2/22/06), 934 So.2d 25, 33. Likewise, "statutes classified as mandatory prescribe, in addition to requiring the doing of the thing specified, the result that will follow if they are not done." Id. (citing Sanders v. Dep't of Health & Human Resources , 388 So.2d 768, 770 (La.1980) ). Payment was not made to WWC within 45 days of formal acceptance of the work and receipt of the clear lien and privilege certificate on May 23, 2016. Therefore, attorney fees are also due to WWC for bringing this mandamus action.
DECREE
For the foregoing reasons, OPSB's exception of no cause of action is denied. Additionally, because La. R.S. 38:2191 applies and WWC has satisfied the statutory requirements for the issuance of a writ of mandamus, we find the trial court erred in denying WWC's petition for a writ of mandamus. Accordingly, the trial court's judgment denying WWC's petition for a writ of mandamus is reversed. The matter is remanded to the trial court to issue the writ of mandamus and to determine the amount of attorney's fees and interest due to WWC for bringing the mandamus action.
REVERSED AND REMANDED

Project completion was 517 days late.

"A ministerial duty is a 'simple, definite, duty, arising under conditions admitted or proved to exist, and imposed by law.' " Hopkins , 16-0907, p. 13-14, 220 So.3d at 15 ; See also Aberta, Inc. v. Atkins , 12-0061, p. 2-3 (La. 5/25/12), 89 So.3d 1161, 1163 (finding a ministerial duty "contains no element of discretion") (internal citations omitted).

See La. C.C.P. art. 3862 (stating "A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice ") (emphasis added).