Judgment rendered February 25, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,765-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BOSSIER PARISH BY AND THROUGH            Plaintiff-Appellee
THE BOSSIER PARISH POLICE JURY

versus

BOGGS & POOLE CONTRACTING                Defendant-Appellant
GROUP, INC.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 172,938

Honorable Charles A. Smith, Judge

* * * * *

SINCLAIR LAW FIRM, LLC                    Counsel for Appellant
By: Scott C. Sinclair

WIENER, WEISS & MADISON, APC              Counsel for Appellee,
By: Geoffrey D. Westmoreland               Bossier Parish by and
    Reid Allen Jones                       through the Bossier
                                           Parish Police Jury

PATRICK R. JACKSON                        Counsel for Appellee,
                                          Bossier Parish

LONG LAW FIRM, LLP                        Counsel for Appellees,
By: Albert Dale Clary                      Prevot Design Services
    Alec Brendan Keane                     and Civil Design Group

DONOHUE, PATRICK & SCOTT, PLLC            Counsel for Appellee,
By: Leigh F. Groves                        Estes, McClure &
                                          Associates, Inc. D/B/A
                                          EMA Engineers &
                                          Consultants

* * * * *

Before ROBINSON, MARCOTTE, and ELLENDER, JJ.

**ROBINSON, J.**

Boggs & Poole Contracting Group, Inc. ("B&P"), which was awarded a contract to build a new central branch public library in Bossier Parish, appeals a judgment denying its petition for a writ of mandamus under La. R.S. 38:2191 to order the Bossier Parish Police Jury ("Bossier") to make the final payment under the construction contract.

Concluding that mandamus was not available because the final payment was not due under the construction contract when the project architect had not approved the final payment, we affirm the judgment.

## FACTS

B&P agreed to construct the library for $9,267,001. Substantial completion was to be reached within 365 days from the start of the work. B&P agreed to pay $2,500 in liquidated damages for each calendar day that the project was inexcusably delayed in meeting substantial completion. B&P provided a performance bond executed by Travelers Casualty and Surety Company. The contract was awarded to B&P on October 6, 2021.

The official start date of the project was October 25, 2021. After B&P requested extensions, Bossier agreed to move the deadline for substantial completion to July 5, 2023.

The project architect, Prevot Design Services, issued a certificate of substantial completion on December 4, 2023. On January 10, 2024, Bossier voted to accept the certificate of substantial completion, which was recorded in the Bossier Parish mortgage records on January 11, 2024. The clerk of court issued a clear lien certificate on February 27, 2024. The library opened to the public on March 11, 2024.

Change orders had increased the construction cost to $9,342,355.87. Bossier has paid $8,715,977 to B&P, leaving an unpaid balance of $626,378.87.

The construction contract provides in Section 5.2.1 that final payment shall be made to B&P when (1) B&P has fully performed the contract except for B&P's responsibility to correct work and to satisfy other requirements, if any, which extend beyond final payment, and (2) a final certificate of payment has been issued by the architect.

Section 9.5.1 of the contract states:

> The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. . . . The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extend as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2. . . .

The contract also provides in Section 9.10.1 that when the architect finds the work acceptable under the contract documents and the contract fully performed, the architect will promptly issue a final certificate for payment stating to the best of the architect's knowledge, information, and belief, and on the basis of the architect's onsite visits and inspections, the work was completed in accordance with the contract and the entire balance found to be due to the contractor and noted in the final certificate was due and payable.

Section 9.10.2 of the contract states that neither final payment nor any remaining retained percentage shall become due until B&P submits to the

architect: (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the work for which Bossier or Bossier's property might be responsible or encumbered (less amounts withheld by Bossier) had been paid or otherwise satisfied; (2) a certificate evidencing that insurance required by the contract documents to remain in force after final payment was currently in effect; (3) a written statement that B&P knew of no reason that the insurance would not be renewable to cover the period required by the contract documents; (4) consent of the surety, if any, to final payment; (5) documentation of any special warranties, such as manufacturers' warranties or specific subcontractor warranties; and (6) if required by Bossier, other data establishing payment or satisfaction of obligations, such as receipts and releases and waivers of liens, claims, security interests, or encumbrances arising out of the contract to the extent and in such form as may be designated by Bossier.

On February 27, 2024, B&P submitted a payment application to Prevot. On April 4, 2024, B&P requested that Bossier pay the total contract price minus the value of certain punch list items.

Prevot did not approve the final payment application. On April 17, 2024, Prevot wrote to B&P that given the value of the liquidated damages and unresolved issues concerning outstanding architectural, MEP, and civil items, it could not recommend payment at the time because it was unable to provide the representations to Bossier as required by Section 9.4.2 and as outlined in Section 9.5.

On April 29, 2024, Bossier Parish filed suit against B&P. Bossier alleged that B&P owed $377,500 in liquidated damages for 151 days of

unexcused delays. Bossier also alleged that B&P failed to install a dry pipe sprinkler system as set forth in the construction contract. It estimated the cost to convert the system to a dry system would be $245,000. Bossier further alleged that B&P failed to complete several items of work. Finally, Bossier alleged that there were construction defects from B&P's failure to construct the library in accordance with the plan and specifications. Bossier alleged that the cost to correct the defects and finish the work would likely exceed $48,000.

In its lawsuit, Bossier sought a declaratory judgment that it was not liable for payment of the remaining balance because of damages owed by B&P. It also sought damages for the cost to complete the project and to resolve all construction defects that will exceed the remaining balance because of B&P's alleged breach of the construction contract.

On December 12, 2024, B&P filed an answer, a reconventional demand, and a third party demand. Prevot Design Services, EMA Engineering & Consulting, Inc., and Civil Design Group, LLC, were named as third party defendants. B&P asserted a claim against Bossier for the balance due under the construction contract, which B&P alleged was $626,378.87 and was due 45 days following receipt of the clear lien certificate. B&P contended it was owed attorney fees and interest as allowed under La. R.S. 38:2191. B&P also asserted a claim against Bossier for delay damages of $259,999.26.

B&P asserted a claim against Bossier, Prevot, and Civil Design for a declaratory judgment that the cracking of the concrete paving in the parking lot was caused by a defective design. B&P also sought a declaratory

4

judgment against Bossier, Prevot, and EMA that the specifications called for the installation of a wet sprinkler system, that Bossier accepted it, and that Bossier was estopped from asserting a claim for a dry sprinkler system. B&P contended that if Bossier was awarded any judgment against it related to the sprinkler system, then B&P was entitled to judgment in a like amount against Prevot and EMA *in solido*.

On July 21, 2025, B&P's attorney wrote to Bossier making a final demand for payment of the remaining balance of $626,378.87. Sent along with the demand letter was Harry Boggs's affidavit of project completion, which stated that B&P had complied with the six requirements set forth in Section 9.10.2 of the contract.

On July 29, 2025, B&P filed a petition for a writ of mandamus seeking final payment of $626,378.87 under the construction contract.

On August 5, 2025, Bossier filed an amended and supplemental petition. It added Travelers Casualty and Surety Company as a defendant. Bossier also sought a declaratory judgment that it was not liable to B&P for any further payment for its work on the project. Bossier alleged that B&P had breached the construction contract by failing to complete the project within the required time period, failed to complete all items within the required scope of work, installed a noncompliant fire suppression system, and performed defective work. Bossier alleged that as B&P's surety under the performance bond, Travelers was liable to Bossier for all damages resulting from B&P's breaches and defaults, and was required to remedy those breaches and defaults.

On August 14, 2025, Bossier filed an exception of unauthorized use of summary proceedings and an exception of no cause of action as to the petition for a writ of mandamus. Bossier argued that mandamus under La. R.S. 38:2191 is only available when final payment is due under the contract, and it was not due because Prevot had not approved the final payment application, which is a discretionary function. Bossier further argued that this case is inappropriate to be resolved on mandamus because of its complexity as it involves highly technical contracts, plans, and specifications.

A hearing on the petition for a writ of mandamus and on Bossier's exceptions was held on August 28, 2025. After the court overruled the exceptions and indicated that it would deny the petition, it accepted evidence and heard testimony from Henry Boggs, the Vice-President of B&P. Boggs testified that all items had been completed, and that there were just questions remaining about whether they had been completed correctly. He also testified that all the requirements of Section 9.10.2 had been met. He further testified that around $288,000 was owed to subcontractors, who are subject to a pay-when-paid clause.

The trial court concluded that mandamus was not proper at that time because the contract required approval by the project architect, which had not been given.

On September 8, 2025, the trial court rendered judgment overruling Bossier's exceptions to the petition for a writ of mandamus and denying the petition. B&P has appealed.

6

**DISCUSSION**

The starting point for the interpretation of any statute is the language of the statute itself. *McBride v. Old Republic Insurance Company*, 24-01519 (La. 6/27/25), 413 So. 3d 452. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9.

It is presumed that every word, sentence, or provision in a law is intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. *Colvin v. Louisiana Patient's Compensation Fund Oversight Bd.*, 06-1104 (La. 1/17/07), 947 So. 2d 15. Courts are thus bound to give effect, if possible, to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving every word can legitimately be found. *Id.*

A writ of mandamus is an extraordinary remedy that is directed at a public officer to compel the performance of a ministerial duty required by law. *Jazz Casino Company, L.L.C. v. Bridges*, 16-1663 (La. 5/3/17), 223 So. 3d 488.

Ministerial duties are duties in which no element of discretion is left to the public officer. *Hoag v. State*, 04-0857 (La. 12/1/04), 889 So. 2d 1019. If a public officer is vested with any element of discretion, mandamus will not lie. *Id.*

Where statutory interpretation is at issue in a mandamus proceeding, a *de novo* standard of review is used on appeal. *Town of Sterlington v.*

7

*Greater Ouachita Water Company*, 52,482 (La. App. 2 Cir. 4/10/19), 268

So. 3d 1257, *writ denied*, 19-00913 (La. 9/24/19), 279 So. 3d 386, and *writ*

*denied*, 19-00717 (La. 9/24/19), 279 So. 3d 931.

La. R.S. 38:2191, which concerns payments under public contracts

states:

> A. All public entities shall promptly pay all obligations including approved change orders, arising under public contracts when the obligations become due and payable under the contract.  All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.
>
> B. (1) Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent.  Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent.
> (2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based on the principal amount due within ten business days of receipt of the interest.
>
> C. The provisions of this Section shall not be subject to waiver by contract.
>
> D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.
>
> E.  A declaration that a public works contract is null and void as being contrary to the provisions of R.S. 38:2211 et seq. shall not affect amounts due and payable under the contract, including overhead and profit, for the work performed by or on behalf of the contractor.

Subsection (D) was added by Act 184 of 2011.

B&P states that the sole question on appeal is whether the trial court properly relied on the contract terms to determine when final payment was due for the purposes of La. R.S. 38:2191(D). B&P contends that the express terms of La. R.S. 38:2191 show that the trial court was incorrect and that the court's interpretation was contrary to the rules of statutory construction.

B&P argues that Subsection (D) refers to Subsection (B) to determine when final payment is due because that is the only subsection which provides when final payment is due. Thus, B&P contends that a final payment becomes due under La. R.S. 38:2191(D) when two things occur: first, when formal final acceptance is established through the issuance and recordation of a substantial completion certificate, and second, 45 days following receipt of a clear lien certificate. B&P maintains that it is entitled to mandamus because both of those had occurred. B&P adds that the fact that Prevot did not issue a certificate for payment cannot defeat Bossier's liability under Subsection (B)(1).

B&P maintains that if the legislature only intended for mandamus to be available when the public entity failed to make final payment when due "under the contract," then it would have stated so.

Bossier counters that payment was not due for purposes of mandamus because it was not due under the contract since Prevot had not given approval for final payment. Bossier argues that Prevot's approval was a prerequisite for final payment, and that adopting B&P's position would "wreak havoc" on public contracting by forcing public entities to make final payments before contractual conditions are met.

Bossier maintains that Subsection (A) answers when final payment is due under Subsection (D). Bossier notes that the words "when" and "due" are completely absent from Subsections (B) and (C).

In support of its argument, B&P relies on *Woodrow Wilson Construction LLC v. Orleans Parish School Board*, 17-0936 (La. App. 4 Cir. 4/18/18), 245 So. 3d 1, *writ denied*, 18-0971 (La. 10/8/18), 253 So. 3d 793. Wilson was awarded a contract to build a school. After receiving a certificate of substantial completion, Wilson submitted an application for final retainage payment, lien waivers, and a clean lien certificate. When the school board failed to make the final payment, Wilson filed a petition to enforce the contract and a petition for a writ of mandamus. The school board asserted that it was allowed to withhold payment because it was entitled to liquidated damages. The trial court denied the petition for a writ of mandamus, concluding that La. R.S. 38:2191 was not applicable because there was a question of whether final payment was due under the contract.

The appellate court in *Wilson* first addressed the board's exception of no cause of action, which was raised for the first time on appeal and premised on the ground that the petition for a writ of mandamus did not name a public official as a defendant. The *Wilson* court noted that La. R.S. 38:2191(D) stated that a public entity shall be subject to mandamus. The court denied the exception, concluding that La. R.S. 38:2191(D) superseded the more general civil code articles dealing with mandamus.

Turning to the mandamus claim, the *Wilson* court stated that the real issue in dispute was when final payment was considered due under the terms of the contract. The court noted that the contract provided that payment for

10

normal retainage was due when six things occurred, and those six enumerated contractual requirements had been fully satisfied. Moreover, the requirements under La. R.S. 38:2191(B) of formal final acceptance of the work and the owner receiving a clear lien and privilege certificate were replicated in the enumerated requirements and were met when Wilson satisfied the contract's requirements.

Relying on a different contract provision, the school board countered that because the amount owed by Wilson in liquidated damages exceeded the amount owed in retainage, final payment was not due under the contract and La. R.S. 38:2191 did not apply. However, the court noted that while that provision allowed the school board to withhold liquidated damages in any way, including by withholding final payment, any alleged right to withhold payment arose only when payment became due. Thus, the school board could not rely on that contract provision without acknowledging that the final retainage payment was due. The *Wilson* court recognized that the school board's ministerial duty to tender payment arose upon satisfaction of the enumerated contract requirements, which in turn satisfied La. R.S. 38:2191(B). As a result, the school board had no discretionary authority to withhold payment under the different contract provision when the requirements of La. R.S. 38:2191 had been met and a ministerial duty was owed. The court added that the school board's reliance on the provision was ill-founded because of La. R.S. 38:2191(C)'s express prohibition against contractually waiving the ministerial duty.

The *Wilson* court concluded that because Wilson had satisfied the requirements of La. R.S. 38:2191, final payment became due and payable,

and the board had a ministerial duty to issue final payment and had no discretion to withhold payment based on a separate claim against Wilson.

We recognize that in *Wilson*, the fourth circuit began its analysis by addressing whether six requirements in the contract for payment had been satisfied. Furthermore, there is no indication that the contract in *Wilson* required specific architect approval for payment.[1]

B&P also relies on *Law Industries, LLC v. Board of Supervisors of Louisiana State University*, 18-1756 (La. App. 1 Cir. 3/2/20), 300 So. 3d 21, *writ denied*, 20-00745 (La. 10/6/20), 302 So. 3d 515. There, the contractor filed a petition for a writ of mandamus to collect an outstanding contract balance of $29,000. The trial court denied the petition, noting that it believed the defendant had a contractual right to an offset for liquidated damages, and that there was element of discretion by LSU as to the amount due once the liquidated damages were applied. The first circuit reversed, concluding that the plaintiff could seek payment through a mandamus proceeding, and the trial court would determine in the summary proceeding what sum was owed under the contract, including the amount of liquidated damages.

Similar to *Wilson*, there is no indication in *Law* that architect approval was required for final payment. We also note that in *Law*, the court recognized the link between Subsections (A) and (D). The court stated:

> Pursuant to La. R.S. 38:2191(A), all contracting public entities "shall" pay all obligations, progressive stage payments, and final payments when they become due and payable under the contract. The use of the word "shall" in this provision unequivocally expresses a public entity's mandatory duty to

---

[1] We acknowledge that among the enumerated requirements was that the architect and owner approve and accept the certificate of substantial completion.

> fulfill its contractual obligations as they become due. Should a public entity fail to fulfill its mandatory duty under La. R.S. 38:2191(A), subsection D, again employing the mandatory "shall," subjects the public entity to a mandamus proceeding to compel payment of the sums due under the contract. *Wallace C. Drennan, Inc. v. St. Charles Parish*, 2016-177 (La. App. 5 Cir. 9/22/16), 202 So.3d 535, 544.

*Id.*, 18-1756 at p. 7, 300 So. 3d at 26.

In support of its position, Bossier cites *Stevens Construction & Design, L.L.C. v. St. Tammany Fire Protection District No. 1*, 19-0955 (La. App. 1 Cir. 7/8/20), 308 So. 3d 724, *writ denied*, 20-00990 (La. 11/4/20), 303 So. 3d 652. Stevens served as the general contractor for the construction of a new fire station and headquarters building. After Stevens was terminated, it submitted three pay applications, none of which were certified by the project architect. Stevens filed a petition for a writ of mandamus seeking to compel payment of five pay applications, including the three submitted after termination. Following a hearing, the trial court dismissed the petition for a writ of mandamus.

The first circuit in *Stevens* read Subsection (D) as allowing mandamus relief against public entities when the public entity failed to tender a final payment when due under the contract. The court added:

> Thus, in order to be entitled to mandamus relief against the Fire District, Stevens Construction must establish that the Fire District "arbitrarily or without reasonable cause" failed to make progressive stage payments or failed to make final payment "when due" under the contract. . . . The public entity is not subject to mandamus compelling payment when the terms of the contract give the public entity discretion as to whether payment is due and payable. Mandamus relief under La. R.S. 38:2191 is available only when there is no discretion left to the public entity as to whether payment is due and payable under the terms of the contract.

*Id.*, 19-0955 at p. 11, 308 So. 3d at 732. Citations omitted.

13

Affirming the trial court, the first circuit noted that the provisions of the construction contract did not mandate payment under the circumstances and allowed for discretion in payment when the provisions of the construction contract were not met. Evidence presented at the hearing included letters from the project architect explaining the reasons for withholding payment. The fire district had not failed to tender final payment when due under the contract.

Bossier further cites *LA Contracting Enterprise, LLC v. South Lafourche Levee District*, 24-0272 (La. App. 1 Cir. 12/20/24), 404 So. 3d 898, where the levee district contracted with LA Contracting to construct a ramp. After the levee district terminated the contract, LA Contracting submitted a final application for payment. The engineering firm tasked with reviewing the payment applications instructed LA Contracting to amend and resubmit it. The engineering firm later advised that it would approve a payment amount that was less than that sought by LA Contracting. LA Contracting filed a suit for mandamus pursuant to La. R.S. 38:2191. The trial court determined that mandamus was not available. The judgment was affirmed.

The first circuit noted that while it had previously held that the general rules of mandamus have limited application when mandamus is sought under La. R.S. 38:2191, a public entity is not subject to mandamus compelling payment when the contract gives the public entity discretion as to whether payment is due and payable.

Although the payment application was characterized as a "progressive stage payment" rather than a "final payment," we note that the *LA*

14

*Contracting* court cited the above-quoted language from *Stevens* as well as language that Subsection (D) makes mandamus relief available when a public entity had failed to tender final payment when due under the contract.

We agree with the rationale in *Stevens Construction* and *LA Contracting* and interpret La. R.S. 38:2191(D) to mean that final payment can be compelled only when final payment is due under the contract. Here, final payment is not due under the contract because the project architect, within its discretion, has not approved the final payment application.

Finally, the contract terms making Prevot's approval of final payment a prerequisite to final payment does not run afoul of Subsection (C)'s prohibition because the contract contained no express waiver of the protections afforded by the statute.

## CONCLUSION

For the foregoing reasons, the judgment denying the petition for a writ of mandamus is affirmed at B&P's costs.

**AFFIRMED**.